UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | | |
|---|---|---|
| LINNEY'S PIZZA, LLC, | ) | |
| | ) | |
| Plaintiffs, | ) | Civil No. 3:22-cv-00071-GFVT |
| | ) | |
| v. | ) | |
| | ) | **OPINION** |
| BOARD OF GOVERNORS OF THE | ) | **&** |
| FEDERAL RESERVE SYSTEM, | ) | **ORDER** |
| | ) | |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on the Board of Governors of the Federal Reserve System's Motion to Dismiss. [R. 7.] Linney's Pizza brought this action alleging that a debit card fee regulation which the Board issued is unlawful. [R. 1.] The Board moves to dismiss because the Administrative Procedure Act's six-year statute of limitations has expired. [R. 7.] Linney's claim accrued on the date the regulation was published in 2011. Therefore, this action, filed in December 2022, is beyond the six-year statute of limitations, the case is untimely, and the Board's Motion to Dismiss [R. 7] is **GRANTED**.

I

"This case is about debit cards." [R. 1 at 1.] Specifically, it is about a regulation governing Linney's Pizza, an LLC which operates a pizza shop in Frankfort, Kentucky. *Id.* at 9. Linney's accepts payment by debit cards. *Id.* The entities which issue those debit cards charge Linney's a fee for each transaction. *Id.* at 4. Regulation II, which Linney's challenges in this action, is rooted in congressional action intended to limit these fees. *Id.* at 5-6. In 2010, Congress passed the Dodd-Frank Act in response to the 2008 financial crisis. Part of that Act,

the Durbin Amendment, governs "interchange fees." *Id.* Merchants pay these fees to debit card issuers, through networks like Visa and Mastercard, "to compensate the issuers for their involvement in debit-card transactions." [R. 1 at 13 (citing 76 Fed. Reg. 43,396).]

Linney's emphasizes that market forces encourage higher, not lower, fees because the networks have substantial market dominance and are incentivized to maximize fees by issuers. *Id.* at 14. Congress agreed with this perspective to some extent when it passed the Durbin Amendment. *Id.* at 15. That amendment limited interchange fees by covered issuers to an amount "reasonable and proportional" to the issuer's "incremental costs" from processing debit payments. *Id.* (citing 15 U.S.C. §§1693o-2(a)(2), (a)(4)(B)(i)). It directed the Board to establish standards to ensure that fees meet that requirement. *Id.* (citing 15 U.S.C. § 1693o-2(a)(3)(A)). In doing so, the Board could consider incremental costs but not other costs. *Id.* (citing § 1693o-2(a)(4)(B)). The Amendment defined incremental costs as costs that issuers incur for their role in "the authorization, clearance, or settlement of a particular debit transaction." *Id.* (quoting § 1693o-2(a)(4)(B)(i)).

The Board issued a proposed rule which Linney's contends "hewed to the Durbin Amendment's statutory text." [R. 1 at 17.] However, Linney's believes that the Board then "buckled under pressure from issuers and networks and reversed course in the final rule." *Id.* at 19. The final rule, Regulation II, states:

> Under the final rule, each issuer could receive interchange fees that do not exceed the sum of the permissible base component and the permissible ad valorem component. The standard's base amount per transaction is 21 cents, which corresponds to the per-transaction allowable cost, excluding fraud losses, of the issuer at the 80th percentile, based on data collected by the Board in a survey of covered issuers. The ad valorem amount is 5 basis points of the transaction's value, which corresponds to the average per-transaction fraud losses of the median issuer, based on the same survey data. Each issuer's supervisor is responsible for verifying that an issuer does not receive interchange fee revenue in excess of that permitted. *See* § 235.9. The Board recognizes that issuers' costs may change over time, and

>the Board anticipates that it will periodically conduct surveys of covered issuers in order to reexamine and potentially reset the fee standard.

76 Fed. Reg. at 43,422. In creating this Rule, the Board created a third category of costs—those not explicitly excluded from consideration by statute—and incorporated those costs into setting the fees. [R. 1 at 19-21.] Linney's believes that the final rule "exceeds the Board's authority, is contrary to law, and is arbitrary and capricious." *Id.* at 26.

The Board moves to dismiss the complaint. It argues that "the Plaintiff's claims accrued in 2011 and are barred by the applicable six-year statute of limitations." [R. 7-1 at 7.] It identifies prior litigation affirming the final rule and finding that recent challenges like Linney's are time-barred. *Id.* (citing *NACS v. Bd. of Governors of the Fed. Reserve Sys.*, 746 F.3d 474 (D.C. Cir. 2014) and *N.D. Retail Ass'n v. Bd. of Governors of the Fed. Reserve Sys.*, 55 F.4th 634 (8th Cir. 2022)). Ultimately, it argues that the "authorities make clear" that the claims in this matter are time-barred. *Id.* at 26.

## II

A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of a plaintiff's complaint. In reviewing a Rule 12(b)(6) motion, the Court "construe[s] the complaint in the light most favorable to the plaintiff, accept[s] its allegations as true, and draw[s] all inferences in favor of the plaintiff." *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). The Court, however, "need not accept as true legal conclusions or unwarranted factual inference." *Id.* (quoting *Gregory v. Shelby Cnty.*, 220 F.3d 433, 446 (6th Cir. 2000)).

### A

Claims under the APA are restricted by a six-year statute of limitations. 28 U.S.C. § 2401(a). Linney's recognizes as such. [R. 1 at 11 (citing *id.*) ("[C]laims under the Administrative Procedure Act are subject to a six-year statute of limitations.").] But it believes

that its claim did not accrue until July 2021. It argues that it did not begin to suffer adverse effects of the Rule until July 2021, when two brothers organized Linney's, purchased a pizza shop, began accepting payment by debit card, and started incurring the allegedly unlawful fees. *Id.* at 11-12. Linney's argues that its claim accrued at that time and is therefore timely. [*See* R. 14 at 15.]

The Board asserts that Linney's claim accrued when the regulation was published in 2011. [R. 7-1 at 18.] Accordingly, the statute of limitations expired in 2017 and Linney's claim is untimely. *Id.* at 18-21. The Board invokes a distinction drawn in numerous circuits between accrual of facial and as-applied APA challenges. *Id.* at 21-26. For example, the Eighth Circuit recently determined that an identical challenge to Regulation II was facial, accrued when the regulation was published, and was therefore untimely. *NDRA*, 55 F.4th at 641. It reached this result even though one of the plaintiffs came "into existence more than six years after the publication of a final agency action." *Id.* at 639; *see also Izaak Walton League of Am., Inc. v. Kimbell*, 558 F.3d 751, 762 (8th Cir. 2009). As a result, the Board argues that Linney's claims "accrued in July 2011 when the Final Rule was published in the Federal Register and are time-barred as a result." [R. 7-1 at 21.]

Linney's opposition to dismissal hinges on its argument that the Sixth Circuit does not distinguish between facial and as-applied challenges when determining the accrual date of an APA claim. [*See* R. 14 at 6-8.] It reaches this conclusion through *Herr v. U.S. Forest Serv.* 803 F.3d 809 (6th Cir. 2015). The Sixth Circuit observed in *Herr* that an APA claim accrues "[o]nce the challenged agency action becomes final and invades a party's legally protected interest." *Id.* at 818-19. Linney's understands this to create a two-part test for accrual: final agency action *and* invasion of a party's protected interest. [*See* R. 14 at 22.] It "first suffered injury" more than six

4

years after the regulation was published—when it began operations in July 2021—so it believes its claim did not accrue until that date, making the action timely. *Id.*

Linney's claim accrued when Regulation II was published and is therefore untimely. Every circuit to have addressed the issue—the Fourth, Fifth, District of Columbia, and Ninth Circuits—has concluded that accrual dates differ between facial and as-applied APA claims. *See NDRA*, 55 F.4th at 640-41 (citing *Hire Order Ltd. v. Marianos*, 698 F.3d 168, 170 (4th Cir. 2012); *Dunn-McCampbell Royalty Int. v. National Park Serv.*, 112 F.3d 1283, 1287 (5th Cir. 1997); *Citizens Alert Regarding the Env't v. EPA*, 102 Fed. Appx. 167, 168-69 (D.C. Cir. 2004); *Wind River Mining Corp. v. United States*, 946 F.2d 710, 715 (9th Cir. 1991)).

The Ninth Circuit persuasively explained the grounds for making this distinction in *Wind River*. 946 F.2d at 715. It reasoned that the distinction "strikes the correct balance between the government's interest in finality and a challenger's interest in contesting an agency's alleged overreaching." *Id*. An agency decision "adverse[ly] appli[ed] . . . to [a] particular challenger" accrues when the "application" occurs because "[s]uch challenges, by their nature, will often require a more 'interested' person than generally will be found in the public at large." *Id.* In contrast, a "policy-based facial challenge" or "mere procedural violation" accrues when the agency decision is reached because "[t]he grounds for such challenges will usually be apparent to any interested citizen within a six-year period following promulgation of the decision." *Id.*

This well-established body of law is no different in the Sixth Circuit. Linney's primary case in support, *Herr*, is consistent with this body of cases. While *Herr* does not explicitly distinguish between accrual in facial versus as-applied challenges, it is evident that it involved an as-applied challenge. 803 F.3d at 819. The Herrs did not claim that a regulation was "unconstitutional in all its applications," a defining feature of a facial challenge. *Bucklew v.*

5

*Precythe*, 139 S. Ct. 1112, 1127 (2019). Rather, they sought to enjoin the Forest Service's threatened enforcement of a regulation. *Herr*, 803 F.3d at 812. The Court directed the reader to "[r]ecall that the Forest Service has threatened criminal action against the Herrs." *Id.* at 822. It then asked whether "anyone really think[s] that the Herrs would not be allowed to challenge the Forest Service's administrative authority to put them in jail for six months or fine them $5,000 based on its interpretation of this statute?" *Id.* The Court emphasized that "[r]egulated parties may always assail a regulation as exceeding the agency's statutory authority in enforcement proceedings against them." *Id.* at 821 (citations omitted). This is an as-applied challenge because it was levied against an enforcement action brought against the plaintiffs.

Linney's claim is different than the Herrs'. The Board is not threatening an enforcement action, nor are enforcement proceedings ongoing. [*See* R. 1.] Linney's is not facing imprisonment or a fine. *Id.* And Linney's is arguing that Regulation II is unconstitutional in all of its applications. *Id.* This challenge is clearly facial because Linney's was not organized until 2021, yet its complaint alleges that the regulation has been unconstitutional since 2011. *Id.* at 9, 8 ("[T]he rule has been anything but reasonable and proportional since 2011."), 23 ("Since adopting Regulation II, the Board has known that it does not accomplish Congress's goal of establishing reasonable and proportional debit-card interchange fees."). *Herr* creates room for this conclusion by observing that "different legal wrongs give rise to different rights of action." 803 F.3d at 820. Linney's claimed wrong is different than the Herrs', giving rise to different dates of accrual.

Linney's understanding of *Herr* would result in a dramatic split from the other circuits that addressed the issue, which *Herr* does not necessitate. It would also create absurd consequences. If Linney's perspective were correct, merely creating a new corporation would

6

grant the entity a six-year period to lodge any APA challenge it desired. This would permit endless challenges which could have been raised within the limitations period. *See Shiny Rock Mining Corp. v. United States*, 906 F.2d 1362, 1365 (9th Cir. 1990) ("Adoption of Shiny Rock's rationale would virtually nullify the statute of limitations for challenges to agency orders."); *see also Vincent Murphy Chevrolet Co., Inc. v. United States*, 766 F.2d 449, 452 (10th Cir. 1985) (observing that the petitioners' view of accrual could "extend the limitations period indefinitely").

This Court agrees with the explicit conclusions of the Fourth, Fifth, District of Columbia, and Ninth Circuits that accrual for an APA claim differs between facial and as-applied challenges. Under those cases, Linney's claim is untimely because it is bringing a facial challenge more than six years after publication of the regulation at issue. The fact that it was incorporated ten years after publication does not permit it to bring a facial challenge which could have been, and in fact was, brought by other petitioners with the same interests. Its argument that its claim accrued on the date it was organized, July 1, 2021, "utterly fails." *Hire Order*, 698 F.3d at 170.

**B**

In the alternative, Linney's argues that it is entitled to equitable tolling. [R. 14 at 27-29.] Equitable tolling extends the statute of limitations when the petitioner diligently pursued their rights and an extraordinary circumstance prevented them from filing suit. *Holland v. Florida*, 560 U.S. 631, 649 (2010) (citing *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)). Linney's claims that it diligently pursued its rights by filing suit "less than a year and a half after being formed as an LLC and starting to accept regulated debit cards." [R. 14 at 28.] It also argues that "the most extraordinary of all circumstances prevented Plaintiff from filing before July 2011: it

did not exist and accept debit cards until July 2021." *Id.* at 27.  Finally, it emphasizes that the "extraordinary nature" of the circumstances surrounding the accrual issue—that "the Board's interchange-fee standard allows issuers to continue to benefit from the unlawful transfer of wealth from merchants like Linney's to the tune of $16.2 billion a year"—make applying of the limitations period "especially inequitable." *Id.* at 28.

      The Board agrees that "equitable tolling may be possible in theory because section 2401(a) is not jurisdictional in the Sixth Circuit." [R. 16 at 16.] However, it asserts that the argument for tolling fails on the merits.  First, it claims that Linney's did not diligently pursue its rights because a year and a half passed between it beginning to accept payment by debit card and it initiating this action.  *Id.* at 17.  Second, Linney's non-existence before July 2021 is not an external obstacle beyond its control, so the Board argues that there are no exceptional circumstances justifying tolling.  *Id.* at 19.

      Linney's is not entitled to equitable tolling.  First, Linney's did not diligently pursue its rights.  Over a year passed between its inception and it filing this action.  [R. 1 at 9.]  The Sixth Circuit has found that a shorter delay of ten months "suggests a lack of diligence." *Hall v. Warden, Lebanon Corr. Inst.*, 662 F.3d 745, 752 (6th Cir. 2011).  In *NDRA*, the Eighth Circuit affirmed rejecting equitable tolling when a plaintiff "immediately began paying the disputed interchange fees" upon its opening and waited more than three years to challenge the fees.  55 F.4th at 642.  Similarly here, the Court will not toll Linney's claim because it paid the disputed debit fees for over a year before challenging them.

      This matter also does not present exceptional circumstances justifying tolling the statute of limitations.  Linney's cites no legal support for its contention that its non-existence is an extraordinary circumstance justifying tolling.  [*See* R. 14 at 27-29.]  Not existing is not

exceptional because every corporate entity, indeed every person, has not existed at some point in the past. There is nothing exceptional about not existing during the limitations period. Linney's is not entitled to equitable tolling.

### III

While it may be true that "this case is about debit cards," the Board's motion to dismiss is about accrual. [R. 1 at 1.] Linney's brings a facial challenge to Regulation II because it claims that the regulation was unconstitutional when it was issued. Linney's claim is not unique to itself, so many entities could—and did—raise the same issues and represent the same interests within the limitations period. The six-year statute of limitations exists to prevent the sort of endless litigation which this action threatens. Accordingly, the Court **GRANTS** the Board's motion to dismiss **[R. 7]** and the Plaintiff's claims are **DISMISSED WITH PREJUDICE**.

This the 15th day of September, 2023.

Gregory F. Van Tatenhove
United States District Judge