UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | |
|---|---|
| LINNEY'S PIZZA, LLC, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>BOARD OF GOVERNORS OF THE )<br>FEDERAL RESERVE SYSTEM, )<br>)<br>Defendant. )<br>) | Civil No. 3:22-cv-00071-GFVT<br><br>**MEMORANDUM OPINION**<br>**&**<br>**ORDER** |

\*\*\* \*\*\* \*\*\* \*\*\*

This Matter is before the Court on a Motion to Intervene brought by proposed intervenors The Bank Policy Institute ("BPI") and The Clearing House Association L.L.C. ("TCH"). [R. 26.] The Proposed Intervenors seek to intervene in this action pursuant to Federal Rule of Civil Procedure 24 in order to defend Regulation II. [R. 26-1 at 6.] They seek intervention of right and by permission. *Id.* at 7. While the Proposed Intervenors' motion is timely, because they do not establish that the Board will inadequately represent their interests, the Motion to Intervene **[R. 26]** is **DENIED**.

**I**

Linney's Pizza initially brought this action on December 9, 2022, challenging the regulation that sets the maximum fee that banks can charge merchants for processing debit-card transactions.[1] [R. 1.] On September 15, 2023, the Court granted the Defendant's motion to dismiss, reasoning that Linney's challenge was untimely. [R. 17.] Linney's appealed that decision, [R. 18], and on September 5, 2024, the Sixth Circuit vacated this Court's judgment

---

[1] *See* 12 C.F.R. § 235 *et seq*. ("Regulation II")

following the Supreme Court's decision in *Corner Post, Inc. v. Bd. of Governors of the Fed. Rsrv. Sys.*, 144 S. Ct. 2440 (2024). [R. 21-1.] The Court received that mandate on October 28, 2024, and, following a joint motion by the parties, entered a scheduling order on January 8, 2025. [R. 25.] Weeks later, on January 27, 2025, the Proposed Intervenors made their motion to intervene.[2] [R. 26.]

## II

Federal Rule of Civil Procedure 24 recognizes two forms of intervention: intervention of right and permissive intervention. The Proposed Intervenors seek both forms. [R. 26.] Linney's objects to either form of intervention, but note that they would not oppose allowing the Proposed Intervenors to file an amicus brief. [R. 37 at 23.] The Defendant takes no position on the Proposed Intervenors' attempt to intervene. [R. 36.]

### A

Federal Rule of Civil Procedure 24(a)(2) provides that the Court must permit intervention when a non-party "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). *Jansen v. City of Cincinnati* establishes the standard for determining whether a non-party is entitled to intervention of right:

---

[2] *Corner Post* itself involves a parallel challenge to Regulation II. *See Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, No. 1:21-cv-00095 (D.N.D.). In that case the Proposed Intervenors also brought a motion to intervene. [R. 45.] The district court in *Corner Post* ultimately denied the Proposed Intervenors' motion, determining that the motion was untimely and that the Board adequately represents the interests of the proposed intervenors. [R. 64.] Furthermore, the district court in *Corner Post* denied the Proposed Intervenors' attempt at permissive intervention, reasoning that allowing the Proposed Intervenors to intervene would "would only serve to further delay disposition of this matter" and would "likely result in significant duplication and consumption of additional resources." *Id*. at 11-12.

> ...the proposed intervenors [must] demonstrate that the following four criteria have been met: (1) the motion to intervene is timely; (2) the proposed intervenors have a significant legal interest in the subject matter of the pending litigation; (3) the disposition of the action may impair or impede the proposed intervenors' ability to protect their legal interest; and (4) the parties to the litigation cannot adequately protect the proposed intervenors' interest.

904 F.2d 336, 340 (6th Cir. 1990) (citing *Triax Co. v. TRW, Inc.*, 724 F.2d 1224, 1227 (6th Cir. 1984)); *see also Grutter v. Bollinger*, 188 F.3d 394 (6th Cir. 1999); Fed. R. Civ. P. 24(a). "The proposed intervenor must prove each of the four factors; failure to meet one of the criteria will require that the motion to intervene be denied." *United States v. Michigan*, 424 F.3d 438, 443 (6th Cir. 2005) (quoting *Grubbs v. Norris*, 870 F.2d 343, 345 (6th Cir. 1989)).

Linney's Pizza argues that the Proposed Intervenors fail to meet two of these criteria, timeliness and adequacy of representation. [R. 37.] In their view, the Proposed Intervenors dallied and dawdled while this case progressed and have sought to intervene at a relatively late hour. *Id*. at 16-21. They also contend that the Board adequately represents the Proposed Intervenors' interests because the Board is actively defending Regulation II. *Id*. at 11-15.

By contrast, the Proposed Intervenors argue that their motion is timely as this case is not near "its final stages" and because they have acted promptly to defend their interests as the legal situation developed. [R. 26-1 at 15-18.] They further suggest that they "cannot rely on the Board to adequately represent their interests" because they have invested heavily in an electronic debit card payments system and the Board has not – leaving the Board in a position where it may ultimately change its mind on defending Regulation II. *Id*. at 19-21. The Proposed Intervenors note that Linney's does not contest the other factors, which the Proposed Intervenors contend are therefore conceded. [R. 43 at 5.] Accordingly, the Court will focus its attention on those factors that are contested: the timeliness of the Proposed Intervenors' motion and whether the Board can adequately protect the Proposed Intervenors' interests.

3

**1**

First, the Court considers whether the Proposed Intervenors' motion is timely. The Sixth Circuit directs district courts to consider five factors in determining whether intervention was timely:

> 1) the point to which the suit has progressed; 2) the purpose for which intervention is sought; 3) the length of time preceding the application during which the proposed intervenors knew or should have known of their interest in the case; 4) the prejudice to the original parties due to the proposed intervenors' failure to promptly intervene after they knew or reasonably should have known of their interest in the case; and 5) the existence of unusual circumstances militating against or in favor of intervention.

*In re Auto. Parts Antitrust Litig.*, 33 F.4th 894, 900 (6th Cir. 2022). The Proposed Intervenors argue that each and every factor supports the timeliness of their motion. [R. 26-1 at 15.] In their view the suit has not progressed substantially as the Court has only dealt with threshold issues up to this point, they are intervening to protect their interests as entities regulated by Regulation II, they acted quickly once they knew their interests were implicated in this case, there will be no prejudice as Linney's claims raise purely legal issues which the Proposed Intervenors are prepared to brief in line with the existing briefing schedule, and, arguably, unusual circumstances are present on account of the Supreme Court's recent decision in *Corner Post*. Id. at 15-18.

**a**

In assessing the point to which the suit has progressed, "[t]he absolute duration of the litigation matters little." *In re Auto. Parts Antitrust Litig.*, 33 F.4th at 901. Rather, the Court looks to "the stage of the proceedings and the nature of the case." *Id*. Litigation is "in its final stages when the district court has already ruled on dispositive motions, closed discovery, certified classes, or held fairness hearings that lead to settlement approval." *Id*. (citations omitted). Linney's of course emphasizes that "in an APA challenge to an agency rule, neither

4

discovery nor certification nor settlement is ever likely to occur." [R. 37 at 17.] And it urges the Court to consider the various milestones that have already passed in this case: the Court ruled on a dispositive motion (Defendant's Motion to Dismiss), the case went to the Sixth Circuit on appeal, the case was returned to this Court, and a scheduling order has now been entered setting a timelines for briefing on a second dispositive motion. *Id*. By contrast, the Proposed Intervenors emphasize that "litigation has thus far been limited to preliminary issues unrelated to Proposed Intervenors' interest in the litigation," namely the statute-of-limitations issue. [R. 26-1 at 15-16.] In their view, the Court has not therefore meaningfully considered the merits of this case.

While the milestones identified by Linney's are not insignificant, the Court believes that the Proposed Intervenors have the better of the argument. The Court need not wade into that age-old substance-procedure distinction to see that the Proposed Intervenor's interests were not readily implicated at the earlier stages of this litigation. While this, in a sense, bleeds into the second subfactor the Court will consider, it is understandable – even reasonable – that the Proposed Intervenors would have remained on the sidelines while the Court considered the Defendant's initial motion to dismiss based on arguments about the statute of limitations. [R. 7.] And indeed, the Court ultimately sided "with the explicit conclusions of the Fourth, Fifth, District of Columbia, and Ninth Circuits" in determining that Linney's claim was untimely because it brought "a facial challenge more than six years after publication of the regulation at issue." [R. 17 at 7.] While the law was subsequently clarified in *Corner Post Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 603 U.S. 799 (2024), at the time of Linney's initial challenge this Court "follow[ed] the lead of every court of appeals that had ever addressed accrual of an APA facial challenge" in dismissing Linney's complaint. *Corner Post Inc.*, 603 U.S. at 846 (Jackson.,

5

J., dissenting). It seems overly demanding, and costly to judicial resources, to require that an intervenor act quickly to oppose a seemingly barred claim when their interests go only to the substance of the litigation. Once this case was remanded to this Court for consideration of the merits of Linney's claim, the Proposed Intervenors acted promptly following this Court's entry of a scheduling order and repeatedly aver that they will "submit substantive briefing in line with the schedule already entered by this Court." [R. 26-1 at 22.] Furthermore, there is no discovery or the like that the Proposed Intervenors' intervention would disrupt. The first subfactor therefore suggests the motion to intervene was timely.

b

The Sixth Circuit has acknowledged that its approach to the second subfactor, the purpose for which intervention is sought, has been "somewhat inconsistent." *In re Auto. Parts Antitrust Litig.*, 33 F.4th at 902. Sometimes courts have focused on "the legitimacy of the intervenors' purported interest" and other times have focused on "whether the would-be intervenors acted promptly in light of their stated purposes." *Id.* (citing *Kirsch v. Dean*, 733 F. App'x 268, 275–76 (6th Cir. 2018)). The Proposed Intervenors' purported interest is in the risk that vacatur of Regulation II will cause "concrete financial harm" to their members by forcing the Board to "issue a regulation that will significantly cut interchange fees." [R. 26-1 at 16-17.] And the Proposed Intervenors emphasize that they "have acted promptly to protect that interest" once it became obvious that this case would be resolved on the merits. *Id.*

Linney's argues that "[t]he purposes identified by the Banking Associations …do not favor excusing the untimeliness of their motion" because the nature of the Proposed Intervenors' financial interests are not relevant to the Court's determination of the validity of Regulation II. [R. 37 at 17-18.] And they note that the Proposed Intervenors' interest, defending Regulation II,

6

is currently in perfect harmony with the Board's identical goal of defending Regulation II. *Id*. Under Linney's view, this particular subfactor would seem to fit poorly with its purpose in helping the Court assess the overall timeliness of intervention – in part due to its seeming overlap, at least in this case, with the question of whether the parties to the litigation can adequately protect the Proposed Intervenors' interests.

Instead, the Court views the question through the second lens identified in *In re Auto. Parts Antitrust Litig.*, "whether the would-be intervenors acted promptly in light of their stated purposes." 33 F.4th at 902. In this case, they have. As explained above, when this action began it seemed readily ascertainable that Linney's claim was barred by the statute of limitations, rendering any assessment on the merits of Regulation II (and thus any decision impacting the Proposed Intervenors' financial interests) hypothetical in the extreme. Having now traveled through the looking glass, the Proposed Intervenors realized their interests were implicated in this litigation and duly sought to intervene. When their purpose of defending Regulation II on the merits reared its head, the Proposed Intervenors acted, a circumstance that does not suggest their intervention is untimely. Even considering "the legitimacy of the intervenors' purported interest," Linney's response does not effectively contend that the Proposed Intervenors' interest is illegitimate. Rather, they suggest that the Proposed Intervenors' interests are already protected by the Board. [R. 37 at 17-18.] The Court will consider those arguments in due course, but nothing here suggests that the Proposed Intervenors' purpose in defending a regulation that they have actively complied with, and made significant investments under, is illegitimate. This subfactor therefore suggests intervention is timely.

c

The Court now assesses the third timeliness subfactor, the length of time preceding the application during which the proposed intervenors knew or should have known of their interest in the case. As the Proposed Intervenor's readily admit, they "have been aware of this litigation given their (and their members') interests," presumably since its inception. [R. 26-1 at 17.] Linney's views this as a two-year delay wherein the Proposed Intervenors adopted an improper "wait-and-see" approach already panned by the Sixth Circuit. [R. 37 at 19 (quoting *Blount-Hill v. Zelman*, 636 F.3d 278, 285-86 (6th Cir. 2011)).] The Proposed Intervenors revert to their consistent argument that they sought intervention as soon as it became apparent their interests were substantively implicated. [R. 26-1 at 17-18.] They also note that they "anticipated that consideration of the core legal questions related to Regulation II would occur in the District of North Dakota and the Eighth Circuit" "given the overlap in parties, counsel, and substantive issues," but that they sought to intervene once it was clear that this case would also proceed. *Id*.

The Court has already accepted the Proposed Intervenors' arguments surrounding the propriety of intervention once the case's substantive issues came to the fore. Nevertheless, they fail to adequately reckon with their delay after the Supreme Court's decision in *Corner Post* was released, which presumably would have put the Proposed Intervenors on notice that this case would proceed to the merits. As Linney's points out, the *Corner Post* decision was in July 2024 and this case was remanded in October 2024. [R. 37 at 20.] The Proposed Intervenors thereafter filed their motion in late January 2025, after the Court established a scheduling order, a delay of several months on the low end and over half a year on the high end.

Perhaps the Proposed Intervenors' belief that the case would be stayed – given the overlap of parties, counsel, and issues – was reasonable, but it also appears to be similar to the

8

"wait-and-see" approach the Sixth Circuit criticized in *Blount-Hill*. The Proposed Intervenors suggest that *Blount-Hill* is inapposite because the proposed intervenors in that case "delayed seeking intervention because they predicted that an election might result in their desired substantive outcome, moving to intervene only once that substantive outcome did not come to fruition." [R. 43 at 13.] However, in *Blount-Hill*, the proposed intervenors waited years to intervene because they assumed that an upcoming election would result in a new attorney general who would reverse the policies of the former attorney general; when it was made clear that the new attorney general "would continue his predecessors' litigation" policies, they filed to intervene. *Blount-Hill*, 636 F.3d at 285-86. Sitting on the sidelines because of seemingly obvious procedural hurdles to a claim is, at least in these circumstances, reasonable. Sitting on the sidelines based on one's own perception of an opposing party's likely litigation maneuvers is entirely different and clearly aligns with what so bothered the *Blount-Hill* court. This third subfactor therefore slightly cuts against the Proposed Intervenors' motion being timely.

d

The Court next turns to whether there is any prejudice to the original parties due to the proposed intervenors' failure to promptly intervene after they knew or reasonably should have known of their interest in the case. Courts "examine the prejudice caused by the delay in intervention, rather than prejudice caused by the intervention itself." *In re Auto. Parts Antitrust Litig.*, 33 F.4th at 905 (citing *United States v. City of Detroit*, 712 F.3d 925, 933 (6th Cir. 2013)). As the Court noted in the prior section, the Proposed Intervenors delayed at least several months past when they knew they should intervene. Naturally, Linney's suggest allowing the Proposed Intervenors to intervene at this point will prejudice the existing parties and "cause undue delay." [R. 37 at 21.] Linney's suggests that "the Banking Associations will not necessarily be limited to

9

the summary-judgement schedule agreed upon by Linney's Pizza and the Board" and that adding the Proposed Intervenors' "proposed motion for summary judgment to the mix will complicate and delay both Linney's Pizza's briefing and this Court's resolutions of the legal questions presented." *Id*.

At this point, the Court finds these concerns to be overstated. The Court's scheduling order currently provides only for briefing on cross-motions for summary judgment, [R. 25], and the parties jointly represented in their motion for that scheduling order that they "currently do not believe that [an] administrative record is needed" "[g]iven the nature of Linney's claims," which raise a purely legal challenge related to the Board's statutory authority. [R. 23.] This is not a case where permitting the Proposed Intervenors to join will result in additional discovery or further expert reports. Instead, granting their motion would merely present, at most, delays in briefing. It is true that "'[e]ach day that' Regulation II is not vacated 'translates as another day of lost income to' Linney's Pizza." [R. 37 at 21 (citing *Stupak-Thrall v. Glickman*, 226 F.3d 467, 478 (6th Cir. 2000)).] And certainly, the Proposed Intervenors were tardy in seeking to intervene after this Court entered its scheduling order. But the Proposed Intervenors themselves aver that they "are prepared to participate in that dispositive briefing consistent with the schedule this Court entered—either by the same date that the Board is scheduled to submit its cross-motion for summary judgment and opposition or at any other time ordered by this Court." [R. 26-1 at 18.] Furthermore, the Proposed Intervenors emphasize that

> Plaintiff did not propose the summary judgment approach to resolving the case and the accompanying briefing schedule until January 6, 2025, Dkt. 23—notwithstanding its counsel having adopted such an approach three and a half months earlier in their identical Corner Post litigation, Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys., No. 1:21-cv-00095 (D.N.D. Sept. 19, 2024), Dkt. 39—thus belying the assertion that a matter of weeks matters here.

10

*Id*.  This indeed undercuts Linney's concerns about possible delays.  Additionally, Linney's appears to expect difficulties, both for the Court and themselves, if the Proposed Intervenors' proposed summary judgment motion is added "to the mix."  Yet Linney's notes that it takes no issue with the Proposed Intervenors filing their arguments as an *amicus* brief.  [R. 37 at 23.]  The Court will in fact carefully read and consider arguments presented to it in both summary judgment briefs *and* in *amicus* briefs, which would appear to flatly contradict Linney's concerns about overly complicating this case.  This case presents complicated legal issues as part of a complicated regulatory framework – insofar as complexity may cause possible delay in this case, the most apt descriptor of any added complexity presented by additional briefing is "in for a penny, in for a pound."  This factor is therefore neutral as to intervention.

   This is not to say the Court is unaware, or unconcerned with, difficulties the existing parties may face in appropriately, and timely, responding to any additional summary judgment briefing should the Court ultimately permit the Proposed Intervenors to intervene or submit an *amicus* brief.  The Sixth Circuit has made clear that a "district court retains broad discretion in setting the precise scope of intervention." *City of Detroit*, 712 F.3d at 933; *see also Stupak-Thrall*, 226 F.3d at 478 (suggesting that the district court could have conditioned intervention on existing case-specific deadlines remaining intact).  The Proposed Intervenors, in arguing against prejudice, suggest that they can, and will, meet the briefing deadlines already established by this Court.  [R. 26-1 at 18.]  The Court will hold them to that commitment.

e

   The Sixth Circuit "does not have an established list of additional factors that it considers" in determining the existence of unusual circumstances militating against or in favor of intervention.  *Davis v. Lifetime Capital, Inc.*, 560 F. App'x 477, 494 (6th Cir. 2014).  And the

11

Proposed Intervenors do not identify any unusual circumstances present in this case, in their motion or their reply. Accordingly, this factor has no weight in the Court's analysis of timeliness.

Putting the pieces together, the Proposed Intervenors motion is timely. This litigation is not in its final stages, even with an initial dispute over the procedural timeliness of Linney's claims having already been resolved, and the Proposed Intervenors acted promptly in light of their stated purpose. While they did dither and dally from when they should have known to intervene – likely following the Supreme Court's decision in *Corner Post* and certainly following the Sixth Circuit's remand to this Court – that incremental delay presents no great prejudice to the parties and can be resolved by this Court through careful management of the briefing schedule. The Court therefore finds that the Proposed Intervenors' motion to intervene is timely.

### 2

The Court now considers the second contested intervention factor, whether the Board can adequately protect the Proposed Intervenors' interests. The Sixth Circuit has held that "Rule [24(a)] is satisfied if the applicant shows that representation of his interest '*may be*' inadequate; and the burden of making that showing should be treated as minimal." *Wineries of the Old Mission Peninsula Ass'n v. Twp. of Peninsula, Michigan*, 41 F.4th 767, 774 (6th Cir. 2022) (quoting *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972)). While the showing required is usually minimal, "[w]hen, as here, the proposed intervenor and party to the suit currently share the 'same ultimate objective'… a presumption of adequate representation arises." *Wineries of Old Mission Peninsula*, 41 F.4th at 774 (citing *United States v. Michigan*,

12

424 F.3d 438, 443–44 (6th Cir. 2005)). It is primarily around this presumption of adequacy that the parties dispute on this issue revolves.

The Proposed Intervenors admit that they are "aligned with the Board on the ultimate conclusion that Plaintiff's challenge should be rejected" but nevertheless "anticipate important substantive differences between their and the Board's position on the statutory basis for that rejection." [R. 26-1 at 21.] They emphasize that they have made significant investments in an electronic debit card payments system and "have a financial interest in ensuring that the Board's rule on permissible interchange fees allows recovery of issuers' costs plus a reasonable rate of return for debit card transactions." *Id*. In their view, the Board does not share that interest and there is still a risk that the Board will ultimately shift its position. *Id*. In response, Linney's argues that this just the sort of case where the "presumption of adequate representation applies." [R. 37 at 12.] Linney's suggests that the Proposed Intervenors cannot overcome that presumption because they have not shown that Linney's and the Board have colluded, that an existing party has interests adverse to the intervenor, or that an existing party has failed in the fulfilment of its duty. *Id*. at 11-12 (quoting *Jordan v. Mich. Conf. of Teamsters Welfare Fund*, 207 F.3d 854, 863 (6th Cir. 2000)).

In reply, the Proposed Intervenors contest the continued vitality of presumptions of adequacy following the Supreme Court's decision in *Berger v. N.C. State Conf. of the NAACP*, 597 U.S. 179 (2022). [R. 43 at 6-7, 11-12.] In dicta[3], the *Berger* decision evinced skepticism

---

[3] In *Berger* the Court explicitly stated that "to resolve this case we need not decide whether a presumption of adequate representation might sometimes be appropriate when a private litigant seeks to defend a law alongside the government or in any other circumstance. We need only acknowledge that a presumption of adequate representation is inappropriate when a duly authorized state agent seeks to intervene to defend a state law." Thus, the presumption of adequacy present in this case was not eliminated by the *Berger* decision. *Berger*, 597 U.S. at 197.

13

toward such presumptions, noting that the Supreme Court had previously declined to endorse a presumption of adequacy and had held that, where private parties' and the government's interests are "related," but not "identical," the movant's burden should be "should be treated as minimal." *Berger*, 597 U.S. at 196 (quoting *Trbovich*, 404 U.S. at 538-39 (1972)). That is because the government, unlike directly regulated parties seeking to intervene, "had to bear in mind broader public-policy implications." *Id*. The Proposed Intervenors point to several post-*Berger* decisions from other courts of appeals to reiterate the "doubt on the continued viability of the ultimate-outcome presumption" *Berger* purportedly cast. [R. 43 at 7, n.1.] They further use *Berger* to distinguish this case from a prior decision from this very Court*, Kentucky v. EPA*, 2023 WL 2415219 (E.D. Ky. Mar. 8, 2023), which applied the presumption they so take issue with.

The Proposed Intervenors argument is thoughtful, but unavailing. As an initial matter, this Court is hesitant to proceed from dicta to fully disregard a presumption regularly applied by the Sixth Circuit. Additionally, *Wineries of Old Mission Peninsula*, which the Proposed Intervenors themselves cite, applied the very presumption at issue here. *Wineries of Old Mission Peninsula*, 41 F.4th at 774-75. Contrary to the Proposed Intervenors' assertion that courts should, and have, treated *Berger* as casting severe doubt on presumptions of adequate representation, *Wineries of Old Mission Peninsula* notably was decided shortly *after* the *Berger* decision. Yet the Sixth Circuit there did not treat *Berger* as abrogating that presumption (and to dispel any doubt the *Wineries* decision did cite *Berger* at various points on other concerns). *Id*. at 777. This Court will therefore continue to apply that presumption.

Linney's correctly points out that the "Banking Associations advance no arguments or evidence that could rebut the presumption of adequacy," and fail to show (or even suggest) collusion between Linney's and the Board, adverse interests held by the Board, or a failure on

14

the part of the Board to fulfill its duties. [R. 37 at 12-13.] Nevertheless, the Proposed Intervenors contend that they have still met their burden because they "anticipate important substantive differences between their and the Board's position on the statutory basis for that rejection." [R. 26-1 at 21.] To that end, the Proposed Intervenors rely on *Michigan State AFL-CIO v. Miller*, 103 F.3d 1240 (6th Cir. 1997), for the idea that intervention may be warranted.

In *Miller*, the Sixth Circuit noted that "it *may* be enough to show that the existing party who purports to seek the same outcome will not make all of the prospective intervenor's arguments." *Id*. at 1247 (emphasis added). Yet as this Court has noted in the past "[a] mere disagreement over litigation strategy ... does not, in and of itself, establish inadequacy of representation." *Ark Encounter, LLC v. Stewart*, 311 F.R.D. 414, 425 (E.D. Ky. 2015) (quoting *Bradley v. Milliken*, 828 F.2d 1186, 1192 (6th Cir. 1987)). In *Miller*, which did not involve the application of any presumptions, the court ultimately found inadequacy of representation based on the fact that Michigan's Secretary of State had not sought interlocutory review of the preliminary injunction in that case and Michigan's attorney general had not appealed at all – not because differing arguments were being made. *Miller*, 103 F.3d at 1248. In this case, the Board has actively defended Regulation II, the same ultimate outcome sought by the Proposed Intervenors, in two different district courts and even to the Supreme Court (including while the Proposed Intervenors sat on the sidelines when the plaintiffs' claims seemed procedurally barred). *See Corner Post, Inc. v. Bd. of Governors of the Fed. Rsrv. Sys.*, 144 S. Ct. 2440 (2024); *Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, No. 1:21-cv-00095 (D.N.D.). That is not indicative of inadequate representation and any minor differences in positions between the Board and the Proposed Intervenors can be presented to the Court via an *amicus* brief.

15

The Proposed Intervenors have therefore failed to demonstrate all four criteria governing intervention as of right. *See Jansen,* 904 F.2d at 340. Intervention under Rule 24(a) is thus not appropriate in this case. *See Grubbs v. Norris*, 870 F.2d 343, 345 (6th Cir. 1989). The Court need not address the remaining factors. *Id.* ("The proposed intervenor must prove each of the four factors; failure to meet one of the criteria will require that the motion to intervene be denied.")

**B**

The Proposed Intervenors also seek permissive intervention. Rule 24(b) provides that "the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24 (b)(1). To intervene permissively, a proposed intervenor must establish that the motion for intervention is timely and alleges at least one common question of law or fact. *Michigan*, 424 F.3d at 445 (citing *Miller*, 103 F.3d at 1248). Once the proposed intervenor establishes these two requirements, "the district court must then balance undue delay and prejudice to the original parties, if any, and any other relevant factors to determine whether, in the court's discretion, intervention should be allowed." *Id*. Allowing permissive intervention is within the sound discretion of the trial judge. *Purnell v. City of Akron*, 925 F.2d 941, 951 (6th Cir. 1991). In fact, "even though there is a common question of law or fact, or the requirements of Rule 24(b) are otherwise satisfied, the court may refuse to allow intervention." 7C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1913 (3d Ed. 2022).

The Proposed Intervenors argue that permissive intervention is appropriate here because they will address the same issues of law as the existing parties, they intervened in a timely fashion, and there is no danger of prejudice as they are "prepared to submit substantive briefing

16

in line with the schedule already entered by this Court." [R. 26-1 at 21-22.] Furthermore, they suggest intervention would contribute to the Court's understanding of the issues in this case. *Id.* at 22. Linney's Pizza opposes permissive intervention, arguing that the Proposed Intervenors' motion is untimely, unwarranted based on the Board's position defending Regulation II, prejudicial to the parties, and likely to set a problematic precedent. [R. 37 at 22-23.]

As discussed above, the Proposed Intervenor's motion is timely. Nevertheless, the Court declines permissive intervention because the Board will adequately represent the Proposed Intervenors' interests and intervention would likely burden judicial economy. Additionally, allowing the Proposed Intervenors to intervene when their interests and goals are so similar to those of the Board would likely result in duplication of Linney's efforts, thus resulting in further delay. Fed. R. Civ. P. 24(b)(3). The Court also finds that allowing intervention in this case would not serve the interests of judicial economy, another "relevant factor." *See Michigan*, 424 F.3d at 445. The parties are currently in the midst of summary judgment briefing in this case, [R. 25], and the Court already expects the briefing to be substantial and thorough. [R. 36.] A volley of further briefs and replies threatens to derail that schedule while presenting largely duplicative arguments.

Nevertheless, to the extent that the Proposed Intervenors do have a slightly different perspective from the Board, the Court will permit them to file a memorandum *amicus curiae* in support of their position. *See Bradley*, 828 F.2d at 1194. While no rule governs the issue at the district court level, it is generally accepted that the district court has discretion to permit the filing of an amicus brief. *Michigan*, 940 F.2d at 165. Doing so provides the Court with the benefit of hearing the Proposed Intervenors' concerns and views without risking delay and duplicative efforts. *Id.*; *see also Blount-Hill*, 636 F.3d at 287-88 (affirming denial of motion to

17

intervene but finding that proposed intervenors "are not without a voice" because the district court permitted them to appear as *amici curiae*); *Stupak-Thrall*, 226 F.3d at 474 (finding that participation through filing briefs as *amici curiae* sufficiently allowed appellants to make known their concerns and noting "that the concerns of an entity seeking intervention can be presented with complete sufficiency through such participation"); *Bradley*, 828 F.2d at 1194 (affirming denial of motions to intervene, in part because "the district court has already taken steps to protect the proposed intervenors' interests by inviting [their counsel] to appear as *amicus curiae* in the case").

The Proposed Intervenors have already contemplated this possibility in their Motion for Leave to File. [R. 44.]  Therein they ask that the Court, should it deny intervention, "consider the attached memorandum of law in support of the attached cross-motion for summary judgment as an amicus brief filed in support of the Board." [R. 44-1 at 2.]  They note that all parties have given consent for the Proposed Intervenors to file an amicus brief in this case. *Id*.  Accordingly, the Court will order the Clerk to file the Proposed Intervenors' memorandum of law as an amicus brief in support of the Board.

### III

Accordingly, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** as follows:

1. The Motion to Intervene **[R. 26]** is **DENIED**;

2. The Motion for Leave **[R. 44]** is **DENIED** to the extent the Proposed Intervenors seek to file their own cross-motion for summary judgment

3. The Motion for Leave to File a Reply in Support of Summary Judgment **[R. 54]** is **DENIED**; and

4. The Clerk of Court is **DIRECTED** to file the Proposed Intervenors' attached memorandum of law in support of the attached cross-motion for summary judgment **[R. 44-4]** as an amicus brief filed in support of the Board.

This the 1st day of May, 2025.

Gregory F. Van Tatenhove
United States District Judge